SCHEUNERT, Respondent, vs: ALBERS and others, imp., Appellants.

*October 8—November 12, 1909.*

*Conspiracy: Instituting inquiry as to sanity: Justification: Court and jury.*

In an action for damages for a malicious conspiracy to cause plaintiff's commitment to an asylum for the insane, the evidence is *held*, as a matter of law, to show that defendants were justified in instituting the judicial inquiry as to plaintiff's sanity, it appearing that they acted in good faith upon information which came to them from sources entitling it to credit and which was of such nature as to justify a belief in the minds of men of reasonable intelligence and prudence that plaintiff was mentally deranged.

APPEAL from a judgment of the circuit court for Ozaukee county: W. J. TURNER, Judge. *Reversed.*

An action for damages wherein plaintiff alleges he was injured by the defendants maliciously conspiring together to bring about his illegal commitment to an asylum for the insane for the wrongful purpose of preventing publication of the fact that adulterous relations existed between plaintiff's wife and the defendant *Henry A. Albers.* The court dismissed the action as to the defendant Herman Heuer. The jury found that the defendant Theodore Hollnagel acted in good faith and without malice, and no judgment was awarded against him. Judgment was awarded against the other defendants for the damages found by the jury, amounting, with the costs, to $578.83. The defendants made various motions which raised the question of the sufficiency of the evidence to sustain the findings of the jury, the correctness of the instructions given, and other alleged errors. This is an appeal from the judgment.

For the appellants there was a brief by *Joseph B. Doe* and *William F. Schanen,* and oral argument by *Mr. Doe.*

For the respondent there was a brief by *Boden & Beuscher*, and oral argument by *F. X. Boden*.

Siebecker, J.    It appears that on July 15, 1907, the defendants Theodore Hollnagel, *John E. Mueller*, and *Chas. A. Maas* presented a petition to the county judge of Ozaukee county for a judicial inquiry as to plaintiff's mental condition and for an order committing him to an insane asylum if he should be found to be insane. Thereupon the county court appointed Drs. William P. McGovern and George F. Savage, residing in said county, to make an examination of and inquiry into the mental condition of the plaintiff and to make report thereof to the court. On July 16, 1907, these doctors made a report on the inquiry, and among others they responded to questions as follows:

"In your opinion is the patient insane? A. Not at present, but with present surroundings he may be." "Is this the first attack? If not, when did others occur, and what was their duration? A. No; two years ago had an attack of nervousness." "What was the cause of this attack? A. Pleurisy and bad health." "Is the disease increasing or stationary? A. Increasing." "Are there rational intervals? A. Yes." "On what subject or in what way is derangement now manifested? State fully. Are there any permanent hallucinations or delusions? A. Continual strife with neighbor. No; nervous condition." "Has the patient shown any disposition to injure others? If so, was it from sudden passion or premeditation? A. Yes; premeditated when tormented." "Should the person be placed in temporary detention quarters, or be sent to an insane hospital or asylum for treatment? A. Sent to sanitarium for treatment."

The other inquiries answered have only a slight bearing, if any, on the existence of any fact or condition tending to show that plaintiff was insane.

At the conclusion of the testimony the court found that there was no evidence that the defendant *Henry A. Albers* had sustained adulterous relations with the plaintiff's wife

and this issue was withdrawn from the jury. It appeared, however, that the plaintiff for some time prior to the institution of the lunacy proceedings, when he published it, had secretly fostered the belief that such adulterous relations had existed for about twelve years; that he accused his wife of infidelity, spoke to her father, Mr. Heuer, about it, and to various persons at different saloons and to others on other occasions, and that he manifested ill will and a desire to do personal violence to Dr. Albers, being restrained therefrom through fear of the legal penalties consequent upon such action. It also appears that Dr. Albers advised with an attorney as to the proper and legal course to pursue under the circumstances; that his attorney instituted inquiries, and was credibly informed of plaintiff's attempt to secure evidence of secret visits by Dr. Albers to his home in his absence, and that, relying in part on the fact that he had observed a resemblance in one child's feet to those of the doctor, he had asserted that Dr. Albers was the father of his two oldest children.

The plaintiff testified that until 1901 he had employed the doctor as his family physician to treat all of the family, that the doctor had attended his wife at childbirth, and that he had taken special precautions lest the medicines prescribed by the doctor for him should have a poisonous effect upon him. It also appears that the defendants had all been informed of these facts, and that plaintiff had manifested an ungovernable temper, had a disposition toward secret anger, inducing him to violence, and that in view of his general demeanor his relatives and others informed thereof were apprehensive of actual harm. These mental states of the plaintiff and others of like nature were known to the defendants.

It appears that these facts were made known to Dr. McGovern by Dr. Albers's attorney, and that the doctor expressed his belief that the plaintiff was mentally deranged and that safety required that his mental condition be officially

ascertained to determine whether or not he ought to be committed to an asylum and receive treatment. The defendants were informed of Dr. McGovern's opinion in the matter. It is undisputed that the district attorney, the town chairman, and the county judge were all consulted, and that upon these facts they advised an inquiry into plaintiff's mental condition, and that the defendants were informed thereof before instituting the proceedings. The evidence sustains and corroborates these facts in the case. The record is barren of any evidence showing that the defendants acted without considering all these facts. It clearly tends to show that the defendants believed that they were true, and relying thereon instituted the proceedings to examine into plaintiff's sanity. Upon the whole evidence the inquiry is whether or not the defendants acted in good faith. Were the facts and circumstances of which the defendants were informed such as to justify the belief in the mind of a person of reasonable intelligence and prudence that the plaintiff was mentally afflicted? If the facts known to the defendants were received by them from sources entitling them to credit, and were of such a nature as to justify them as reasonably intelligent and prudent men in taking the steps they did to institute the inquiry as to plaintiff's mental condition, then they acted upon probable cause and were justified in taking steps to have his mental condition ascertained to determine whether or not he was insane.

In searching the evidence to ascertain whether or not the defendants had probable cause to institute the proceeding, and whether or not they acted from an honest motive in the matter, the fact that the court found that the evidence fails to show that the defendant *Albers* sustained adulterous relations with the plaintiff's wife has great weight. Treating this as a verity in the case, as we must upon the record, it lends substantial support to defendants' claim that the plaintiff displayed a state of mind indicating insanity. This fact

of itself places plaintiff in the position of charging his wife with adultery without foundation, and of persisting in the charge in a manner and to an extent which might well lead to suspicion of his mental soundness. The case, however, does not rest here. The defendants were also informed of plaintiff's singular and threatening conduct toward his wife and *Dr. Albers*. It appears that they submitted the facts and circumstances within their knowledge to a physician, an attorney, and the county judge, and received their confirmatory opinions that the plaintiff ought to be examined as to his sanity. Furthermore, the physicians appointed to examine the plaintiff as to his sanity reported to the effect that the plaintiff displayed a mental condition which evinced extreme nervousness which required treatment and might lead to insanity. This presents an array of persuasive facts and circumstances which would justify a person of reasonable intelligence and prudence in instituting an inquiry into plaintiff's sanity. The evidence of the case is without a basis for an inference that defendants acted without probable cause in procuring an inquest of plaintiff's mental condition. It is clearly insufficient to support the claim that the inquest was instituted for the malicious purpose of preventing plaintiff from testifying against *Dr. Albers* as to the alleged adultery. All the facts and circumstances harmonize in showing that the defendants acted on the belief that the plaintiff was mentally so afflicted as to require an examination as to his sanity, and that they instituted the inquest to have it judicially determined in good faith.

We are of the opinion that the court erred in refusing to grant defendants' motion for direction of a verdict in their favor, and in refusing to direct the jury to answer the tenth question of the special verdict—whether the defendants had probable cause to believe that plaintiff ought to be examined as to his sanity—in the affirmative, and in not awarding the defendants judgment in the case.

*By the Court.*—Judgment reversed, and the cause remanded to the trial court to change the answer to the tenth question in the special verdict from "No" to "Yes," and on the verdict as so corrected to award judgment in defendants' favor and against the plaintiff for the costs of the action.